UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No: 05 CR 792 |
| ) | |
| FAUST VILLAZAN, DANIEL DESMOND, ) | |
| and ELLEN ROTH. ) | Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

The United States of America brought a five-count Superseding Indictment against Defendants Faust Villazan ("Villazan"); Faustech Industries, Inc., ("Faustech")[1]; Siemens Medical Solutions USA, Inc ("SMS").[2]; Daniel Desmond; and Ellen Roth. Count I of the Superseding Indictment charges that all Defendants violated the wire fraud statute, 18 U.S.C. § 1343, by sending an e-mail on October 3, 2001, relating to an alleged scheme to defraud Cook County. Count II charges that all Defendants participated in a scheme to defraud on February 22, 2001, in violation of the mail fraud statute, 18 U.S.C. § 1341. Count III alleges that Defendants Faust Villazan and Faustech Industries, Inc. paid a Cook County official $20,000 to "influence and reward" him in connection with the contract for the Cook County Hospital. Count IV alleged that Defendant Daniel Desmond knowingly made false material declarations in a proceeding before a court in the trial of *GE Co. v. County of Cook*, 00-C-6587. Count V charges that Defendant Ellen Roth knowingly and willfully made materially false, fictitious, and fraudulent statements to the Federal Bureau of Investigations ("FBI").

---

[1] On May 17, 2006, the Court granted the Government's agreed motion to dismiss the Superseding Indictment as to Defendant Faustech.

[2] On February 8, 2007, the Siemens Medical Solutions USA, Inc. entered a plea of guilty to a single count of the Superseding Information, charging some of the conduct also alleged in the Superseding Indictment.

Presently before the Court are three motions by Defendants: (1) Motion to Dismiss Counts One and Two for Failure to Allege the Deprivation of a Cognizable "Property" Interest; (2) Motion to Dismiss Count One for Failure to Allege a Wire Transmission that "Furthered" the Charged Conspiracy; and (3) Motion to Sever Count Three. For the following reasons, these motions are denied.

## BACKGROUND

The following is a summary of the facts alleged in the Superseding Indictment.

On May 15, 2000, Cook County sought bids to supply and maintain radiology equipment at a new Cook County Hospital. This bid was called Bid Package No. 3. DD Industries and two other providers bid on the project. DD Industries was supposedly owned by both Siemens and Faustech Industries, Inc., a minority business enterprise. Faustech Industries, Inc. was owned by Villazan.[3]

The bid documents stated, "the bidder shall at all times observe and comply with all laws, ordinances, regulations and codes of the Federal, State, County and other local government agencies which may in any manner effect the preparation of the Bid Proposal or the performance of the contract." The County's Minority Business Enterprise ("MBE") and Women's Business Enterprise ("WBE") ordinances provided that no bidder would be awarded an eligible contract unless the County's Office of Contract Compliance approved its MBE and WBE plans or granted a waiver to the bidder. The MBE/WBE ordinances required that bidders set aside not less than 30 percent and 10 percent of the total contract price for the participation of the MBEs and WBEs,

---

[3] On May 17, 2005, the Government's agreed Motion to Dismiss Defendant Faustech Industries, Inc. from the superseding indictment was granted.

2

respectively. Bidders could satisfy the County's MBE/WBE participation by forming a joint-venture entity but only if the MBE had a 30 percent interest in the joint venture and was to receive 30 percent of the profits and losses of the venture. To obtain the contract, a joint venture was required to submit a notarized Affidavit of Joint Venture ("Affidavit"), to be accompanied by a copy of the joint-venture agreement demonstrating to the County the MBE's or WBE's share in the "ownership, control, management responsibilities, risks and profits" of the joint venture. The Affidavit sought information regarding the venturers' relationship, including: the MBE/WBE's percentages of profit and loss sharing, the means and manner of any compensation to any managing partner, and any "material facts of additional information pertinent to the control and structure" of the joint venture. The Affidavit also required the joint venture partners to identify "other applicable ownership interests, including ownership options or other agreements which restrict or limit ownership and/or control" and directed the partners to provide copies of "all" written agreements between venturers concerning the project. The persons signing the Affidavit further "covenant[ed] and agree[d] to provide the County current, complete, and accurate information regarding the actual Joint Venture work and payment therefore." Signatories were warned that any material misrepresentation would be grounds for contract termination and action under federal or state laws concerning false statements.

During the Spring of 2000, a Siemens salesperson and Villazan agreed to work together on the radiology-equipment bid. Prior to bidding on the contract, Desmond and Villazan and other Siemens personnel met with County officials, including Cook County Employee A (the recipient of the bribe charged in Count Three), to discuss the bid and how SMS could form a joint venture with Faustech to comply with the County's MBE/WBE requirements.

3

On May 25, 2000, Villazan and an unnamed SMS Manager ("Manager A") negotiated a flat-fee compensation agreement, whereby Siemens would pay Villazan a set amount of money in lieu of any agreement to share profits and losses with Faustech.

On May 25, 2000, Roth received an e-mail from Manager A, setting out the terms of the non-compliant flat-fee arrangement that Siemens negotiated with Villazan. The terms attached were the following: Siemens would pay Villazan $50,000 if the bid was granted to Siemens by August 2000; $100,000 when payment was made pursuant to the purchase order; $200,000 when Siemens received a payment of the delivery portion from Cook County; and $150,000 when the County made its final payment. The agreement guaranteed that Villazan would receive at least $450,000. Siemens and Villazan agreed that Faustech and Villazan would perform only limited work under the bid. Pursuant to the agreement, there was no relationship between profits and losses from the radiology contract and payment to be made by SMS to Villazan. On that same date, Manager A discussed the agreement with Desmond.

On June 1, 2000, Roth worked with Desmond, Villazan and other uncharged Siemens employees to draft the legal documents to create the sham joint venture between SMS and Faustech: DD Industries, LLC, named after its nominal head, Desmond.

On June 5, 2000, the County held a pre-bid meeting for Bid Package No. 3. Several persons attended on behalf of SMS, Faustech, and DD Industries, including Desmond and Villazan. At the meeting, Cook County Employee A discussed the MBE/WBE regulations and bid requirements, including that any bid that did not meet the 30 percent and 10 percent requirements would risk disqualification.

4

On June 20, 2000, DD Industries submitted the radiology-equipment bid. In submitting the bid, the Defendants signed and submitted an Affidavit, swearing that: profit and loss sharing between Siemens and Faustech would be in accordance with each party's ownership percentage, or 70 percent for Siemens and 30 percent for Faustech; there were no other applicable ownership interests, including ownership options or other agreements that restricted or limited ownership and/or control; and service agreements between DD Industries and its members established payment for equipment and services rendered. DD Industries also submitted to Cook County a notarized Affidavit of Joint Venture, signed by principals from both companies, including Villazan and an officer of Siemens. However, as set out above, DD Industries was not, in fact, a valid joint venture; Villazan and a Siemens manager had negotiated a flat-fee compensation agreement, whereby Siemens would pay Villazan $450,000 on a fixed payment schedule and a bonus of $50,000 (if certain conditions were met) in lieu of any agreement to share profits and losses with Faustech as was required by the bid documents and the County's MBE/WBE ordinances.

On June 20, 2000, Roth e-mailed a revised joint-venture agreement to Villazan's attorney, Desmond, and other persons at Siemens. In the email, Roth informed the recipients that she was withholding or concealing from the County the "service agreements" with Faustech and Siemens, including the information on payment schedules and milestones, even though Cook County required the joint venture to include with the bid all written agreements between them. Roth further directed that these payment schedules and milestones should not be disclosed, saying they "are, and should be treated as, confidential to the parties."

5

On June 22, 2000, the bids for the radiology contract were opened with one County Commissioner present. After the bids were opened, they were referred to the County's Office of Contract Compliance for review to ensure that the bids complied with the bid requirements, including the MBE/WBE ordinances.

On July 11, 2000, a report was submitted to the Cook County Board by the County's purchasing agent that the joint-venture bid submitted by DD Industries was the lowest qualified bid meeting specifications.

The radiology contract was formally awarded to DD Industries by the County Board on or about August 9, 2000.

In August 2000, Roth told a Siemens manager that the undisclosed, flat-fee compensation deal between Siemens and Villazan was the only agreement they had, that there were no other agreements between the parties concerning payment to Faustech, and that Siemens would never have to pay Villazan more than $500,000, despite the representations to the County. The Superseding Indictment alleges that in August 2000, Villazan requested that Siemens immediately pay him $300,000, instead of the payment terms reached on or about May 25, 2000. On August 23, 2000, Siemens paid Villazan $300,000 as a partial payment.

On September 23, 2000, Villazan paid a $20,000 cash bribe to Cook County Compliance Officer A in connection with DD Industries' bid. (Count III)

On or about October 24, 2000, GE Medical Systems (one of the unsuccessful bidders) filed a complaint against Cook County in the U.S. District Court for the Northern District of Illinois, captioned *Chicago in GE Co. v. County of Cook*, 00 C 6587. GE sought to enjoin the performance of the County's contract with DD Industries on the basis that the bid was contrary to

state law, the County's own ordinances, and the terms and conditions of the bid request. On or about January 5, 2001, DD Industries intervened as a party to the lawsuit. All parties conducted discovery, and an evidentiary hearing was held in late January 2001.

The Defendants made misrepresentations during the *GE* litigation by actively hiding the flat-fee compensation agreement from Cook County and the court, claiming instead that Faustech would share in the profits and losses of the joint venture in accordance with Defendants' purported joint-venture ownership and that the $500,000 flat-fee compensation agreement was merely an "advance of profits." Further, during the litigation, when GE Medical Systems sought documents relating to and including the so-called $500,000 "side agreement" between Siemens and Faustech, Siemens did not produce all the evidence in its possession concerning the existence of this flat-fee compensation agreement entered into on May 25, 2000. Further, at trial, Desmond fraudulently testified at trial that the Affidavit of Joint Venture was true and accurate, even though Siemens had failed to disclose in it the $500,000 flat-fee compensation agreement between Siemens and Villazan. Desmond testified during the hearing in federal court that the $300,000 payment to Faustech in late August 2000 was an advance of profits Faustech anticipated to receive from the radiology contract, despite Desmond's and Siemens' knowledge that the only payment arrangement between Siemens and Faustech was the $500,000 flat-fee compensation agreement. (Count IV).

Following the hearing, which was decided in favor of GE Medical Systems, the Cook County Office of Capital Planning and Policy sent a notice of default to DD Industries. On or about October 3, 2001, Desmond, on behalf of Siemens, responded to the County, objecting to the termination of the contract.

7

On September 14, 2004, Roth told an FBI agent: (1) she had no idea what was meant by an email confirming the $500,000 flat-fee compensation agreement between Siemens and Villazan; (2) she would have been shocked if Siemens had participated in any agreements other than what had been disclosed to the County; and (3) Siemens' payments to Villazan were an advance of profits. (Count V)

## STANDARDS OF REVIEW

Rule 12(b)(2) permits pretrial motions to be raised when they can be resolved without trial of the general issue. Fed.R.Crim.P. 12(b)(2). An indictment is sufficient if it: "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. Ramsey*, 406 F.3d 426, 429-30 (7th Cir. 2005). The "question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the mailings charged were in furtherance of the scheme, but rather whether the Government conceivably could produce evidence at trial showing that the designated mailings were for the purposes of executing the scheme." *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977). In making this determination, the court must assume that all alleged facts are true and "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). This standard is "stringent," and "a court should dismiss only if the Government's inability to produce sufficient evidence so convincingly appears on the fact of the indictment . . . ." *United States v. Sorich*, 427 F. Supp.2d 820, 830 (N.D. Ill. 2006).

Federal Rule of Criminal Procedure 8(b) provides that multiple defendants may be tried in a joint trial "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(d). The same series of acts or transactions are those that are pursuant to a common plan or scheme. *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003).

## ANALYSIS

### *Deprivation of a Cognizable "Property" Interest*

In Counts I and II of the Superseding Indictment, the Defendants were charged with participating in a scheme to defraud by use of wire transmissions and/or the mail, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341, respectively. The elements of mail and/or wire fraud are: (1) the defendant knowingly devised or participated in the scheme to defraud or to obtain money or property by means of false pretenses, representations, omissions, or promises; (2) the defendant did so knowingly and with the intent to defraud; and, (3) for the purpose of carrying out the scheme or attempting to do so, the defendant caused the use of the United States Mails [or caused interstate wire communications to take place] in the manner charged. *7th Circuit Pattern Instructions, Criminal*, 18 U.S.C. 1341 & 1343, at 259 (1999 ed.).

Defendants assert that Counts I and II of the Superseding Indictment should be dismissed for failure to state the deprivation of a cognizable property interest for two reasons.

9

The Defendants first allege that the mail and wire fraud counts charged in the Superseding Indictment are insufficient because they allege mail and wire fraud statutes require that the object of the fraud be money or property, rather than an intangible right, citing *McNally v. United States*, 483 U.S. 350 (1987) *(McNally)*, and *Cleveland v. United States*, 531 U.S. 12 (2000) *(Cleveland)*.[4]

The Defendants' argument has recently been expressly rejected by the Seventh Circuit in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006) *(Leahy)*. In *Leahy*, as here, the defendants were charged with mail and wire fraud arising out of a scheme "to cheat the City of Chicago out of funds slotted for minority- and women-owned businesses." *Leahy*, 464 F.3d at 778. The *Leahy* defendants, as here, argued that the indictment was insufficient in that the city would have paid the same amount of money for the same services in the absence of the alleged fraud and that the city only lost a regulatory interest in controlling where its money was spent. The Seventh Circuit plainly rejected the argument that the fraud did not deprive the city of "money or property," noting that "the object was money, plain and simple, taken under false pretenses from the city in its role as a purchaser of services" and holding that the fraud was not removed from the reach of the federal mail and wire fraud statutes. *Leahy*, 464 F.3d 788. Here, as in *Leahy*, the Superseding Indictment in this case alleges deprivation of "a contract [with Cook County] worth approximately $49 million, as well as funds actually paid pursuant to the contract." (Superseding Indictment at ¶ 16.)

---

[4] In response to the Court's decision in *McNally*, Congress enacted 18 U.S.C. § 1346. Section 1346 defines "a scheme or artifice to defraud" to include not only a scheme that deprives the victim of money or property but also "a scheme or artifice to deprive another of the intangible right to honest services." 18 U.S.C. 1346. A violation of Section 1346 is not alleged in the Superseding Indictment.

10

Cook County's right to control its own spending is not a regulatory interest but a property right. Thus, the Superseding Indictment satisfies the pleading requirements of Federal Rule of Criminal Procedure 8(d); and Defendants' motion to dismiss in this regard is denied.[5]

Second, the Defendants argue that Cook County has no "property" interest in enforcing an unconstitutional regulatory ordinance. On November 2, 2000, Northern District of Illinois Judge Grady held that the MBE ordinance violated the Equal Protection Clause by giving preferential treatment to certain individuals based on race, gender, and/or ethnicity and was, thus, unconstitutional *ab initio*; the decision was affirmed on July 6, 2001. *Builders Ass'n of Greater Chicago*, 123 F. Supp.2d 1087 (N.D. Ill. 2000), *aff'd* 256 F.3d 642 (7th Cir. 2001) (*Builders Ass'n*). The Defendants argue that the dates of the mailing and e-mailing charged in the Superseding Indictment occurred on October 3, 2001 and February 22, 2001, respectively, at a time the County had no valid interest in enforcing the MBE ordinance. Therefore, the Superseding Indictment should be dismissed as the enforcement of a unconstitutional ordinance does not constitute a valid property interest for purposes of the mail and wire fraud statutes.

The Defendants' argument is unavailing for two reasons. First, the Superseding Indictment alleges that Defendants committed wire and mail fraud that began before the ruling in *Builders Association*: the MBE ordinance was declared unconstitutional six months after the allegedly fraudulent bid was submitted to Cook County. The later invalidation of the MBE/WBE ordinance

---

[5] The Defendants also argue the County would have paid more money if it had selected one of the other companies who had submitted higher bids. However, this argument, even if it were properly considered, is speculative, to say the least; these others bidders presumably complied with the County's MBE/WBE requirements (indeed, at least one of the other bidders filed suit, claiming that it had). These bidders may have suffered a competitive disadvantage by complying with the MBE/WBE requirements and perhaps could have otherwise submitted a lower bid than the Defendants.

11

does not excuse the Defendants' fraud, since the statute was valid at the time the bid was awarded. The wire and mailing are charged in the Superseding Indictment as additional misstatements in furtherance of the scheme to defraud that began in Spring 2000 and lasted through at least October 2001. Rather, as alleged in the Superseding Indictment, the Defendants' actions in the *General Electric* litigation – all of which occurred after Judge Grady's decision, and some of which occurred before the Seventh Circuit affirmed Judge Grady's decision – illustrate that the Defendants continued to cover-up their actions with respect to the contract. The Superseding Indictment alleges the Defendants did not admit to the County that they were not in compliance with the MBE/WBE statutes and continued to assert that they were in compliance. "The specific intent required under the mail fraud statute is the intent to defraud, . . . and not the intent to violate a statute." *United States v. Paradies*, 98 F.3d 1266, 1285 (11th Cir. 1996), *quoting United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989).

Further, the subsequent change in the law does not void the charged fraud that the Defendants are alleged to have perpetrated; it is well established that a subsequent change in law is not a defense to criminal activity. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 36-37 (1979) (arrest made before ordinance declared unconstitutional was valid arrest); *Parker v. United States*, 433 F.2d 15, 17 (7th Cir. 1970) (voluntary guilty plea to a statute later declared unconstitutional does not void the plea).

Lastly, even in the absence of the MBE/WBE statute, the Defendants are charged with committing a fraud on the County. The Superseding Indictment alleges that the Defendants created a sham corporation and signed an Affidavit that they "covenant[ed] and agree[d] to provide the County current, complete, and accurate information regarding the actual Joint Venture work and

payment therefore." The Defendants are charged with having failed to disclose the full nature of the financial relationship between them. The Superseding Indictment pleads that on June 20, 2000, DD Industries submitted the Affidavit in support of the radiology-equipment bid, which stated that there would be profit and loss sharing between Siemens and Faustech and would be in accordance with each party's ownership percentage, i.e., 70 percent for Siemens and 30 percent for Faustech. Thus, here, the inquiry is not whether a governmental entity could have a "property" interest in enforcing a regulatory ordinance but, rather, whether the Government conceivably could produce evidence at trial showing that the Defendants used the mail or wire transmissions to knowingly devise or participate in the scheme to defraud, or obtain money or property by means of false pretenses, representations, omissions, or promises with the intent to defraud. *7th Circuit Pattern Instructions, Criminal*, 18 U.S.C. 1341 & 1343, at 259 (1999 ed.); *Castor*, 558 F.2d at 384. The Defendants' Motion to Dismiss Counts One and Two of the Superseding Indictment for failure to state a cognizable property interest is denied.

*Failure to Allege a Wire Transmission that "Furthered" the Charged Conspiracy*

The Defendants, in support of a somewhat related argument, point to the following facts: that Magistrate Judge Brown issued the opinion in the *General Electric* litigation, to which the County was a party, on March 5, 2001, which found that the Defendants "worked a fraud on the County," *General Electric v. County of Cook*, 00 C 6587, 2001 WL 417321 at 42. The Defendants argue this fully disclosed to Cook County both the nature and extent of the fraud scheme alleged in the Superseding Indictment and that the wire transmission at issue in Count One was sent

thereafter, seven months later, on October 3, 2001. Therefore, the Defendants assert that, as a matter of law, the later wire transmission set out in Count One cannot support an allegation of wire fraud because it does not satisfy the "in-furtherance" requirement of the mail and wire fraud statutes because it was sent by Defendants at a time when the County knew of the scheme.

The wire fraud statute requires that a wire transmission be "in furtherance" of a fraud scheme. *United States v. Wormick*, 709 F.2d 454, 462 (7th Cir. 1983). If a fraud scheme has reached fruition and the alleged victim is fully aware of the fraud scheme, subsequent wire transmissions cannot satisfy the in-furtherance requirement. *Kann v. United States*, 324 U.S. 88, 94 (1944). The Superseding Indictment alleges that the Defendants' actions during the *General Electric* litigation following Judge Brown's decision were not those of conspirators whose conspiracy had reached fruition but, rather, of those of conspirators whose actions were furthering the conspiracy. A mailing can further a charged scheme if it "lulls" the victim into a false sense of security or otherwise assists the defendant in avoiding detection. *See, e.g., Schmuck v. United States*, 489 U.S. 705 (1989); *United States v. Lane*, 474 U.S. 438 (1986). The Superseding Indictment alleges that during the litigation, the Defendants certified that they were in compliance with the MBE/WBE statute. Also, following the issuance of Judge Brown's decision and after the County Office of Capital Planning and Policy sent a notice of default to DD Industries, Desmond, on behalf of Siemens, responded to the County, objecting to termination of the contract and asserting that the Defendants did not violate the ordinance. Thus, the Superseding Indictment sufficiently alleges that the Defendants' actions were in furtherance of the charged conspiracy.

*Severance of Count Three*

As detailed above, Counts One and Two of the Superseding Indictment charge violations of 18 U.S.C. § 1343 (wire fraud) and § 1341 (mail fraud) based on false statements allegedly made in June 2000 to obtain a $49 million contract to provide radiology equipment to the new Cook County Hospital. Count Three of the Superseding Indictment charges that in September 2000, Defendant Villazan allegedly gave an employee of the Cook County Office of Contract Compliance $20,000 to "influence and reward" the award of the bid. Defendants Roth and Desmond seek to sever Count Three from the remainder of the charges at trial because they assert that Count Three is not a part of a common scheme. Rule 8(b) permits the joinder of offenses when they are part of the "same series of acts or transactions." Fed.R.Civ.P. 8(b) has been construed to mean that the acts or transactions must be undertaken "pursuant to a common plan or common scheme." *United States v. Lanas*, 324 F.3d at 899. Here, joinder is proper because, as charged, Count Three is related to the Defendants' scheme to defraud the County and conceal the true nature of the financial relationship between the parties alleged in Counts One and Two. Joinder under Rule 8(b) is proper where, as here, the indictment sets forth a "joint, systematic, integrated fraudulent venture," *United States v. Todosijevic*, 161 F.3d 479, 483 (7th Cir. 1998), or where a group of people came together to perform different tasks in the same overarching course of conduct, *United States v. Comadoll*, 689 F.2d 679, 685 (7th Cir. 1982).

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Counts One and Two for Failure to Allege the Deprivation of a Cognizable "Property" Interest, Motion to Dismiss Count One for Failure to Allege a Wire Transmission that "Furthered" the Charged Conspiracy, and Motion to Sever Count Three are denied.

Date: February 15, 2007

JOHN W. DARRAH
United States District Court Judge