CA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 CR 792 - 4 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| DANIEL DESMOND, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Daniel Desmond has pled guilty to Count Four of a superseding indictment, perjury, a violation of 18 U.S.C. § 1623(a). Additionally, for purposes of sentencing, Desmond has stipulated to having committed the offenses set forth in Counts One and Two of the superseding indictment, wire fraud and mail fraud. The matter comes before the Court for sentencing.

This case stems from a bid by a large corporation, Siemens Medical Solutions ("SMS"), for a radiology contract at the Cook County Hospital ("the County"). The County required that bids for the $49 million contract provide that thirty percent of the work be performed by a Minority Business Enterprises ("MBE"). To satisfy the MBE requirements, SMS entered into an agreement with Faustech Industries ("Faustech"), a certified MBE, to form a joint venture,

DD Industries. Under the Joint Venture Agreement, which was submitted to the County, Faustech was to share in thirty percent of the profits and losses of DD Industries. However, contrary to the information submitted to the County, SMS and Faustech entered into a side agreement, whereby SMS would pay Faustech a flat-fee and Faustech would do only limited, if any, work.

Defendant Desmond has pled guilty to committing perjury while testifying during a civil case, *GE v. County of Cook*, which sought to set aside the SMS bid. He also admitted to having committed wire fraud and mail fraud arising out of the fraudulent bid. As calculated in the Presentence Investigation Report, Desmond's offense level is 26 with a criminal history category of I; the Guidelines range for imprisonment is 63 to 78 months, which is reduced to 60 months because the statutory maximum sentence for the offense is five years. The Court has considered information in the Presentence Investigation Report and sentencing memoranda and other materials submitted by the parties.

The "starting point and the initial benchmark" of any sentencing should always be to calculate the applicable Guideline range. *Gall v. United States*, 128 S.Ct. 586, 596 (2007) (*Gall*). However, the Guidelines are "not the only consideration" – a district judge should then "consider all of the factors [listed in 18 U.S.C. § 3553(a)] to determine whether they support a sentence requested by a party." *Gall*, 128 S.Ct. at 596. The judge "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 597.

However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S.Ct.

2

at 594. A sentence departing downward from the guidelines to impose no or only nominal imprisonment "can be justified only by a careful impartial weighing of the statutory sentencing factors." *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008) (quoting *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007)). That said, the Supreme Court has held that requiring "extraordinary circumstances" to justify a sentence outside the Guidelines range or mandating the use of "a rigid mathematical formula" comes "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Gall*, 128 S.Ct. at 595. A court should "impose a sentence sufficient, *but not greater than necessary*," to comply with the purposes set out in § 3553. 18 U.S.C. § 3553(a).

After careful consideration of the sentencing factors set out in § 3553(a) and all the information available at sentencing, the Court has determined that a downward departure from the Guidelines is required; and a sentence of probation, rather than imprisonment, is appropriate in Desmond's case.

Desmond's annual income from his job at SMS was in the neighborhood of $100,000; he was not a decision-maker for SMS with regard to the fraudulent bid for the contract. Rather, Desmond was an employee who followed the orders of his supervisors and played no part in devising the fraud nor in the decision to create the purported joint venture that would submit the fraudulent bid to the County. Nor did he have any part in negotiating the illegal side agreement between SMS and Faustech, whereby Faust Villazan (Faustech's owner) would receive $500,000. Desmond learned by telephone from Tom McGeogh, Director of Sales for SMS, that he, Desmond, was to be president of the joint venture. McGeogh informed Desmond, who had never been president of any business, that he was chosen because he traveled less than

3

Richard Brockman, Vice President of Sales for SMS (who had negotiated the illegal flat-fee agreement with Defendant Faust Villazan). It has yet to be explained why Desmond was purportedly selected to operate the joint venture because Brockman was not as available as Desmond. The joint venture was in fact a shell entity with no apparent responsibilities or function and was formed in name only to perpetrate the $49 million fraud on the County.

Furthermore, while Desmond did perjure himself during the course of the civil proceedings, and this serious criminal conduct must not be minimized, he was not among those at SMS who devised or supervised the litigation strategy, in the subsequent civil proceeding, that was designed to conceal the fraudulent nature of SMS's bid. Actually, Desmond initially testified truthfully at his deposition regarding the nature of the joint venture. It was only after a trial preparation session with outside counsel, John Scholnick, that Desmond agreed to and did testify falsely at the hearing. While not excusing Desmond's conduct, the facts considered in totality reveal a calculated intent to deceive the County and the court in the subsequent civil proceeding by persons far higher in the SMS corporate structure than Desmond. However, Desmond and Ellen Roth, an in-house counsel and Assistant Secretary of SMS, are the only SMS employees charged.

Considering the nature and circumstances of the offense in this light, the Court finds that the offense level determined under the Guidelines substantially overstates the seriousness of the offense. *See* U.S.S.G. § 2B1.1 Application Note 19(v)(C). Both the offense of conviction and the two stipulated counts have a base level offense of six. However the loss amount, calculated at $14.7 million in accordance with *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006), leads to an increase of 20 levels, under §2B1.1(b)(1)(K). Thus, it is the amount of loss, $14.7 million,

4

that causes an increase of 20 levels that vastly overstates Desmond's culpability and produces a Guidelines sentence that is grossly disproportional to Desmond's relatively minor participation in the offense. This is particularly so when Desmond is compared to those who initiated, planned and provided the driving force behind the fraud, yet received nothing in the way of prosecution and punishment. *See United States v. Samaras*, 390 F.Supp.2d 805, 809-10 (E.D.Wis. 2005) (finding a sentence below the Guidelines range appropriate where range was driven by a high loss amount, but defendant had no role in setting that amount and did not profit from it any more than from his legitimate business dealings); *See also United States v. Redemann*, 295 F.Supp.2d 887, 899 (E.D.Wis. 2003) (a defendant with a limited or inferior role in the fraud may be entitled to a downward departure).

The corporation, SMS, was charged with and previously pled guilty to one count of obstruction of justice pursuant to a plea agreement with the Government. SMS did not stipulate to the underlying fraud offense; and as a result, SMS paid only a fine of $1 million, without probation, and restitution based on an agreed loss amount of $1,516,683. Had SMS been held accountable for the $14.7 million loss amount, it would have faced a maximum fine of $29.4 million with $26,460,000 as the low end of the Guidelines range. The gross disparity between the $14.7 million used to calculate Desmond's sentence here under the Guidelines and the a penalty based on a loss amount of $1.5 million paid by SMS leads to a manifestly unjust result. The corporation that initiated and was the intended primary beneficiary of the fraud received a relatively small financial penalty;[1] whereas, a low-level employee, who had no role in devising

---

[1] Siemens AG, the parent company of SMS, had annual revenue of approximately 87 billion euros in 2001. SMS, itself, had revenues in the billions of dollars.

5

the fraud scheme and would have received no financial benefit, is subject to several years of incarceration under the Guidelines.[2]

Furthermore, a sentence within the Guideline range would not provide further deterrence with respect to Desmond. Under § 3553(a)(2)(C), a court must consider the need for the sentence imposed to protect the public from further crimes of the defendant. The numerous letters received on behalf of Desmond show him to be an exceptionally caring and kind individual. The Court is confident that Desmond's error in judgment, which has already cost him dearly in terms of his career, finances and reputation, is a one-time occurrence.

A sentence within the Guidelines range may also be ineffective or counterproductive in terms of deterrence to others. Under § 3553(a)(2)(B), a court must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct generally. In this case, those individuals in SMS who initiated and drove the scheme to defraud the County are not before the Court. To harshly punish only Desmond in these circumstances would not deter and could encourage others in positions of control to make decisions, such as here, to violate the law, knowing that those lower on the corporate ladder would bear the risks of detection and prosecution. A term of imprisonment for Desmond could produce a result contrary to the

---

[2]The Court recognizes that the relevant scope when considering sentencing disparities considered under § 3553(a)(6) is generally nationwide. *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). However, in this case, the situation of Desmond's role in the offense is so unique that few other cases are likely to be relevant for purposes of comparison.

instruction of § 3553(a)(2)(A) that a court shall consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See Gall*, 128 S.Ct. at 599 ("a sentence of imprisonment may work to promote not respect, but derision of the law . . .").

Under § 3553(a)(3) a court must consider the kinds of sentencing available. Here, a sentence of probation is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. A term of probation, including a significant term of home confinement, will be a significant restriction on Desmond's freedom. He shall also pay a substantial fine and perform a period of community service. Such a sentence is sufficient but not greater than necessary to meet the sentencing requirements of § 3553(a) discussed above.

Dated: March 11, 2008

JOHN W. DARRAH
United States District Court Judge